IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MARYLAND

ALICIA N. WATKINS,
Plaintiff,                                )
                                          )
v.                                        )
                                          )   Case No. _____
                                          )
                                          )
                                          )   **TRIAL BY JURY DEMANDED**
THE AIR FORCE TIMES                       )
STEPHEN LOSEY                             )
MIKE DICKERSON                            )
SIGHTLINE MEDIA GROUP,                    )
MICHAEL "HONCO" SWANEY                    )
                                          )
Defendants.

## COMPLAINT

COMES NOW Plaintiff, Alicia N. Watkins, and respectfully states her Complaint against Defendants, The Air Force Times, Stephen Losey, Mike Swaney, Mike Dickerson, Sightline Media Group as follows:

1. This Complaint arises from Sightline Media Group's illegal publication of an article with the sole intent to defame, discredit and disparage Alicia N. Watkins ("Ms. Watkins") and present her in a false light because she was a black woman offered a job opportunity by then Republican Presidential Candidate Donald J. Trump. Ms. Watkins is a disabled 9/11 Survivor, formerly homeless veteran and wounded warrior who attended a Trump presser to advocate for homeless and jobless veterans. Mike Dickerson and The Air Force Times intentionally used his article to intimidate and prevent Ms. Watkins from her pending harassment suit against the military (filed December 15, 2015).

## PARTIES

2. Ms. Watkins is an individual who resides in Maryland.

3. Sightline Media Group is a publication organized and existing under the laws of the State of the Virginia with its principal place of business being located in Virginia owned by a Virginia based company. Mr. Swaney's residence however he is an employee of Sightline Media Group.

4. Mr. Losey is an individual residing in Virginia.

5. Mike Dickerson is an individual living in Texas.

## JURISDICTION AND VENUE

6. Ms. Watkins is a citizen of the State of Maryland for purposes of diversity jurisdiction under 28 U.S.C. § 1332.

7. SMG and Mr. Losey are citizens of Virginia for purposes of diversity jurisdiction under 28 U.S.C. § 1332. Mr.

8. Mike Dickerson is a citizen of Texas for purposes of diversity under 28 U.S.C. § 1332.

9. This Court has original subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1332 as there exists a complete diversity of citizenship between Ms. Watkins, SMG, and Mr. Dickerson. and the amount in controversy exceeds Seventy- Five Thousand Dollars ($75,000.00), exclusive of interest and cost

10. SMG, Mr. Losey, Mr. Dickerson are subject to the jurisdiction of this Court pursuant to 28 U.S.C. § 1332.

11. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

## INTRODUCTION

12. Government corruption is finally being exposed as government officials and media outlets are being blasted for their illegal exposure of information. SIGHTLINE MEDIA GROUP (SMG) published a knowingly false and defamatory series of articles entitled *"Air Force Vet Impersonates Reporter at Trump Event "*(changed to *Allegedly), Alicia Watkins Lied About Military Records,* (changed to *"Military Records Don't Support Claims Made By Veteran Who Dazzled Donald Trump"*

13. The purpose of the SMG article, title, and postings were maliciously designed to cast Ms. Watkins in a false light and malign President Trump. The false, suggestive, and defamatory statements published by SMG conveyed to the average viewer, listener, and reader that Ms. Watkins was that she either lied about her credentials and/or lied about her claim to be both an Iraq and Afghanistan War Veteran. President Trump's selection and instant generosity to Ms. Watkins as a black woman, scattered the racist and misogynistic narrative spun by the media during the time, which was the sole motivation of SMG to defame Ms. Watkins to President Trump.  Mr. Losey and Mr. Dickerson , first violated the Privacy Act of  Ms. Watkins and then published false information about Ms. Watkins and her service record. The portrayal of Ms. Watkins in the SMG story is false and purposely casts Ms. Watkins in a false light and was known to be false at the time of publication.

14. The statements, lies, and insinuations leveled toward Ms. Watkins were reckless, vile, and devoid of any decency or concern for Ms. Watkins's reputation and livelihood.

15. If SMG had reported the unbiased and unadulterated truth, viewers and readers would know Ms. Watkins has a history of advocating for homeless veterans, 9/11 victims, veteran suicide and Post Traumatic Stress Disorder (PTSD).

This information was easily available and blatantly known to SMG. Reporting these facts would not favor the lawsuit Ms. Watkins had against the military so they were not told. Instead a malicious story was developed and told and quoted over and over again to the detriment of Ms. Watkins's 18-year, and previously impeccable reputation.

16. The goal of the SMG article was not to present an accurate or fair picture of Ms. Watkins's, her credentials, her image, or her service record. Mr. Losey, first published the article and then tried to align the facts to fit his libelous article.

17. The false and defamatory publication fits the agenda of SMG's Mr. Losey, with Mr. Dickerson's assistance, to abandon traditional Air Force Public Affairs regulations and journalistic integrity and ethics to project their political bias and dishonesty onto the American public. SMG went from reporting the news to being a gossip magazine cloaked under military name designed to mislead the public. The attacks went from ridiculous to childish and insane and Ms. Watkins was an innocent victim of their agenda.

18. The false and defamatory statements were published by SMG in online videos, online articles, and social media posts. They were shared thousands of times on social media.

19. The false and defamatory statements assassinated Ms. Watkins's character and damaged her reputation and interfered with her business relationships. The goal was to prevent Watkins from continuing Dec 15 lawsuit.

20. In publishing the false and defamatory accusations against Ms. Watkins, SMG abandoned journalistic and literary integrity and ignored fundamental standards of editorial and ethical conduct by publishing false and defamatory accusations with actual malice.

21. As a result of its conduct as herein described, SMG crossed the threshold from speech protected by the First Amendment to enter the arena of actionable defamation and false light or which it must be held legally accountable.

## CAUSE OF ACTION FOR FALSE LIGHT AND PUBLIC DISCLOUSURE OF PRIVATE FACTS -ALL DEFENDANTS

22. Ms. Watkins incorporates by reference paragraphs 1-21 of this Complaint as though the same were set forth herein in their entirety.

23. On March 31 2016, SMG published an article about Ms. Watkins which purposely cast Ms. Watkins in a false light. It also provided private information purposely unreleased to the public and that information was incorrect and known to be incorrect at the time. It also suggested that Ms. Watkins lied about her service record instead of the truth, that the military had erased Ms. Watkins's records when she became a Air Force Whistleblower.

## CAUSE OF ACTION FOR DEFAMATION-ALL DEFENDANTS

24. Ms. Watkins incorporates by reference paragraphs 1-23 of this Complaint as though the same were set forth herein in their entirety.

25. On March 31st, SMG published an article entitled *"Military Records Don't Support Claims Made By Veteran Who Dazzled Donald Trump"* in which the entire

article was a defamatory portrayal of Ms. Watkins by SMG. Mr. Losey conveyed a grossly inaccurate and false impression of Ms. Watkins and her reputation and livelihood. The substance of the SMG article is false and defamatory per se that Ms. Watkins is a fraud that has lied about her service for the sake of publicity.

26. The SMG article constitutes libel and/or slander per se in that it directly and/or implicitly imputes actions to Ms. Watkins that injure her in her professional reputation. Watkins was harassed and received death threats as a result of the articles. She was subject to public scorn and ridicule.

27. The SMG article constitutes libel and/or slander per se in that it directly and/or implicitly imputes actions to Ms. Watkins that are defamatory and injurious to her reputation on their face and can be so understood without reference to any additional or extrinsic facts.

## PUBLICATION WITH ACTUAL MALICE- ALL DEFENDANTS

28. Evidencing a reckless disregard for truth or falsity, Defendants knowingly and purposely avoided the truth and ignored evidence establishing the falsity of the AFT article prior to publishing it.

29. Evidencing a reckless disregard for truth or falsity, Defendants published accusations against Ms. Watkins that were so inherently improbable on their face as to raise serious doubts about their truth.

30. Evidencing a reckless disregard for truth or falsity, Defendants published accusations against Ms. Watkins that were so outrageous on their face as to raise serious doubts about their truth.

31. Evidencing a reckless disregard for truth or falsity, Defendants published accusations against Ms. Watkins that clearly contradicted known facts and Privacy Act violations.

32. Evidencing a reckless disregard for truth or falsity, Defendants

published accusations against Ms. Watkins based solely on sources that were known to be biased, unreliable and incorrect.

33. Evidencing a reckless disregard for truth or falsity, Defendants published accusations against Ms. Watkins without conducting even a cursory investigation, which failure constitutes gross negligence.

34. Defendants had actual knowledge that the facts against Ms. Watkins were false prior to publication. Defendants intentionally manipulated facts to fabricate its obsession to malign Ms. Watkins from her lawsuit. Defendants repeatedly refused to retract or correct—and instead doubled-down on—the false and defamatory statements and posted them on social media.

35. Despite all the information—specifically available to SMG—SMG steadfastly refused to retract or correct their defamatory statements and instead doubled-down on them repeatedly over the ensuing days, thereby greatly expanding the audience that saw them and magnifying the damage to Ms. Watkins. Moreover, SMG has willfully and maliciously kept their articles and social media posts publicly available online to this day.

## CAUSE FOR ACTION INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

36. Ms. Watkins incorporates by reference paragraphs 1-35 of this Complaint as though the same were set forth herein in their entirety.

37. The tort of intentional infliction of emotional distress has four elements:

(1) the defendant must act intentionally or recklessly;

(2) the defendant's conduct must be extreme and outrageous; and

(3) the conduct must be the cause

(4) of severe emotional distress. Hyatt, 943 S.W.2d at 297.

38. The defendant's conduct was more than malicious and intentional; Mr. Dickerson was trying to salvage a longtime "black eye" when Watkins came forth as a whistleblower against the Air Force and eventually sued them.

39. Implying that Ms. Watkins was not a 9/11 Survivor, homeless, or a wounded warrior and that all her painful accounts of 9/11 were attention seeking lies were of suicidal magnitudes to Ms. Watkins, who has suffered severe PTSD from 9/11.

40. SMG's behavior, as described in plaintiff's petition, was not just mean-spirited or uncouth; rather its conduct reflected a calculated plan to cause Ms. Watkins emotional harm.

41. The alleged motive behind Mr. Dickerson's conduct was retaliation for Ms. Watkins's lawsuit against the military and interfering with the racist and misogynistic narrative the SMG' operated to destroy President Trump's Presidential run. All of the acts attributed to SMG, taken together, were so outrageous as to be utterly intolerable in a civilized community.

42. Mr. Losey then tried to contact Watkins in an effort to harass her after he'd already written the article and published it. He was not looking to gain facts.

## DAMAGES

36. The false and defamatory SMG article and post was published to third parties and was, in fact, viewed by third parties intentionally.

37. The false and defamatory SMG article and post was of and concerning Ms. Watkins, among other reasons, identified Ms. Watkins as a woman "posing" as a member of the media who got a job "interview" with President Trump.

38. As a direct and proximate result of the false and defamatory statements about her in the SMG article, Ms. Watkins's personal reputation and her reputation have been permanently damaged.

39. As a direct and proximate result of the false and defamatory statements about her in the SMG article, Ms. Watkins has suffered stress, emotional distress, embarrassment, humiliation, anger, and other mental pain and suffering.

40. As a direct and proximate result of the false and defamatory statements about her in the SMG article, Ms. Watkins has suffered public hatred, contempt, scorn, and ridicule.

41. As a direct and proximate result of the false and defamatory statements about her in the SMG article, Ms. Watkins has suffered special damages.

42. As a result of the false and defamatory SMG article, Ms. Watkins will not garner the respect she has earned as a female black member of the media breaking the usual white male dominance.

43. As a result of the false and defamatory SMG article, Ms. Watkins has suffered emotional and psychological damage as a result of the SMG article. Ms.

Watkins's family and friends have also shunned and sited the SMG article in their disparagement of Ms. Watkins.

44. Internationally, the false and defamatory SMG article follows her and she has lost out on several job opportunities that she otherwise would have obtained.

45. Indeed, prior to the false and defamatory SMG article, Ms. Watkins was highly sought after and respected individual. Reporters and thousands of websites took the SMG articles and used it as a reference to harass and bash Ms. Watkins.

46. In addition, prior to the false and defamatory SMG article, Ms. Watkins was sought after for community and philanthropic endeavors.

47. Ms. Watkins has been the recipient of multiple vile and hateful telephone calls that no person should have to endure.

48. She has received messages calling her repulsive names and expletives.

49. As a result of the false and defamatory SMG article, the community began viewing Ms. Watkins in a negative and shameful light. As a result, Ms. Watkins have withdrawn from all activities she previously enjoyed.

50. As set forth above, the SMG article is defamatory and libelous per se entitling Ms. Watkins to presumed damages.

51. The conduct of SMG demonstrates willful misconduct and an entire

want of care that raises a conscious indifference to consequences.

52. SMG published the false and defamatory accusations with Constitutional actual malice thereby entitling Ms. Watkins to an award of punitive damages.

53. Ms. Watkins is also entitled to an award of punitive damages from SMG in order to publish it for its unlawful conduct and to penalize and deter it from repeating such unlawful and egregious conduct to other veterans or citizens.

WHEREFORE, Ms. Watkins

demands: (a) Trial by jury;

(b) That judgment be entered against SMG for compensatory damages in an amount of not less than Twenty Million Dollars ($20,000,000.00);

(c) That judgment be entered against SMG for punitive damages in an amount of not less than Five Million Dollars ($10,000,000.00) to punish and penalize SMG and deter SMG from repeating its

(d) That SMG cease and desist from further publication of the SMG article;

(e) That all costs of this action be assessed against SMG; and

(f) That this Court award such other relief as it deems equitable,

**just, and proper.**

Respectfully submitted this 31st day of March 2017.

_____

Alicia Watkins
Pro Se
10221 River Rd #59717
Potomac, MD 20879
Justice4troops@gmail.com
240-778-2832